**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GENSHENG WANG and JIAXIAN WANG,

Petitioners,

v.

JAMES JANECHA, et al.,

Respondents.

**CASE NO.** 5:26-CV-04657-CTS

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On August 17, 2026, Petitioners Gensheng Wang and Jiaxian Wang ("Petitioners"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Pet.," ECF No. 1), alleging that they are in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), in violation of the Constitution and laws of the United States. (*Id.*) For the reasons stated below, the Petition is **DENIED**.

## I. BACKGROUND

The Petition alleges that Petitioners are father (Gensheng) and son (Jiaxian), both nationals of the People's Republic of China who fled China due to religious

persecution. (*Id.* at ¶¶ 1, 11, 19.) On January 17, 2026, they were inspected and lawfully admitted to the United States on valid B-2 nonimmigrant visas, with authorization to stay through July 16, 2026. (*Id.* at ¶ 20.) In or about June 2026, Petitioners filed applications for asylum with United States Citizenship and Immigration Services ("USCIS"), which are pending. (*Id.* at ¶ 21.)

Since their entry into the United States, Petitioners have lived together in Chino Hills, California, established community ties, and have no criminal history. (*Id.* at ¶ 22.) In connection with their asylum applications, USCIS directed them to appear for biometrics collection. (*Id.* at ¶ 23.) The notice issued to Jiaxian, dated July 18, 2026, set his appointment for August 4, 2026. (*Id.*) On August 3, 2026, Petitioners went together to the USCIS Application Support Center in Pomona, California, to ask whether their fingerprints could be taken. (*Id.* at ¶ 24.) While Petitioners were inside the USCIS office, ICE officers arrested them without prior notice or hearing. (*Id.* at ¶ 25.) Petitioners have been in custody since. (*Id.* at ¶ 27.) On August 7, 2026, four days after he was arrested, USCIS issued Gensheng a notice to appear in Pomona on August 27, 2026, regarding his asylum application. (*Id.* at ¶ 32.) Petitioners' immigration detention has prevented them from submitting information necessary for their asylum applications. (*Id.*)

The Answer neither disputes these allegations nor provides additional facts or exhibits. (*See generally* Ans.)

## II. LEGAL STANDARD

A writ of habeas corpus may be granted to any petitioner who demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). The writ is "available to every individual detained within the United States," *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), including non-citizens in the custody of immigration authorities. *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's

detention without bond hearing fell within the "core of habeas"). A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

### A. Petitioners' Procedural Due Process Claims

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Courts generally apply the three-part test articulated in *Mathews* to determine what procedures are constitutionally sufficient to protect a liberty interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) ("assuming without deciding" that *Mathews* applied and applying test in immigration detention context). Under that test, courts consider (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In immigration contexts, the Ninth Circuit has instructed that courts should "interpret the Due Process Clause consistent with longstanding precedent recognizing that the

process due aliens must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens." *Rodriguez Diaz*, 53 F.4th at 1205–06.

First, the Court considers Petitioners' private liberty interest in remaining out of immigration custody. Petitioners have resided in the United States since January 17, 2026, have established community ties, and have pending asylum applications. (Pet. ¶ 22.) However, as visa overstays, Petitioners do not have the strong liberty interest that may be applicable to noncitizens who were previously detained and then paroled by immigration officials. *Hu v. Mullin*, No. 5:26-cv-05539-ADS, 2026 WL 3270731, at *2 (C.D. Cal. Oct 30, 2026) (collecting visa overstay cases in the Central District of California); *Sheng v. Janecka*, No. 5:26-cv-04398-BFM, 2026 WL 2365088, at *1 (C.D. Cal. Aug. 14, 2026) (holding that individuals admitted on a visa do not possess the same liberty interests as those released on parole). Unlike Petitioners, noncitizens who were previously detained and then released from immigration custody had "an implicit promise" from the government that his or her liberty would be revoked only if he or she failed to live up to the conditions of release. *Song v. Janecha*, No. 5:26-cv-03896-AS, 2026 WL 2164151, at *3 (C.D. Cal. July 23, 2026) (citing *Morrissey v. Brewster*, 408 U.S. 471, 481 (1972)). Petitioners, having never previously been in or released from immigration custody, received no such promise. Petitioners' liberty interest was "tenuous," and "endured only under the threat of detention, without further cause or notice, due to [their] lack of legal status." *Id.*

The Court also does not find that Petitioners' application for asylum created a liberty interest. Although some decisions in this Circuit have found a heightened liberty interest where an asylum applicant has been in the United States for a lengthy period of time, the Court agrees that those cases "read intentionality into what the Court understood used to be a deliberate separation between the mechanisms that enforced our immigration law and those that adjudicate requests

for humanitarian relief, and is now something closer to bureaucratic neglect." *Ryakhovskiy v. Santacruz*, No. 2:26-cv-09123-BFM, 2026 WL 2584960, at *1–2 (C.D. Cal. Aug. 31, 2026) (holding that due process did not require notice or a pre-deprivation hearing for a petitioner who entered two years ago on a temporary visa that expired and had filed an asylum application). As in *Ryakhovskiy*, without deciding that the duration or nature of an asylum applicant's stay can never give rise to a heightened liberty interest, the Court concludes that those facts are not before the Court in this case, where the Petitioners entered the United States earlier this year on visitor visas. (Pet. ¶ 20.)

Taking the third *Mathews* factor next, the Ninth Circuit has recognized that distinct considerations apply to immigration detention, where the due-process inquiry "can and must account for the heightened governmental interest." *Rodriguez Diaz*, 53 F.4th at 1206. The Supreme Court opined that courts "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Id.* at 1208 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). Thus, even though Petitioners have a liberty interest here, the Court notes the government's interest "of the highest order," in enforcing immigration laws, particularly "when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Rodriguez Diaz*, 53 F.4th at 1208.

As to the second *Mathews* factor, the risk of erroneous deprivation of Petitioner's liberty is also lower than that of someone who was already found not to pose a flight risk or danger to the community. *Ryakhovskiy*, 2026 WL 2584960, at *2. Furthermore, in a case where a petitioner had been detained for over 14 months, the Ninth Circuit has held that "existing agency procedures sufficiently protected [the petitioner's] liberty interest and mitigated the risk of erroneous deprivation." *Rodriguez Diaz*, 53 F.4th at 1209. In *Rodriguez Diaz*, the Ninth Circuit observed: "Section 1226(a) and its implementing regulations provide

extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. "These procedures ensure[] that the risk of erroneous deprivation would be 'relatively small.'" *Id.* at 1210 (quoting *Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017)).

The Petition does not allege that Respondents failed to provide Petitioners with the protections described in *Rodriguez Diaz*, such as an initial custody determination or an initial or subsequent bond hearing. 53 F.4th at 1202.[1] Respondents state that Petitioners are entitled to a bond hearing on request. (Ans. 2.) Petitioners do not indicate whether they have requested such a bond hearing. Should Petitioners request and receive a bond hearing, and believe that the hearing is subject to this Court's review under *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024), Petitioners should file another petition for writ of habeas corpus.

Based on the facts of this case, and the balancing of the *Mathews* factors, the Court does not find that pre-deprivation notice and hearing, which are beyond the

///

---

[1] The Petition alleges: "Nor did any ICE administrative warrant supply the missing process," and then argues that ICE warrants are insufficient for due process purposes. (Pet. ¶ 37.) To the extent that Petitioners argue that their arrests were warrantless and that this deficiency in their arrests was a violation of procedural due process, that deficiency would not warrant immediate release. *See U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (holding that the object of the writ of habeas corpus "is to ascertain whether the prisoner can lawfully be detained in custody"); *Alvarez-Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir. 1991) (denying habeas relief because "even if [petitioner]'s detention was illegal prior to the 1990 Act, if that Act gave the Attorney General the authority to hold [him] today, his present custody is not illegal and habeas corpus is not available").

procedures provided for in *Rodriguez Diaz*, are required to mitigate the risk of erroneous deprivation for these Petitioners.

**B. Petitioner's Substantive Due Process Claims**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadyvdas*, 533 U.S. at 690. A substantive due process violation during confinement arises "when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021). "The point at which detention constitutes a due process violation requires a case-by-case analysis." *Id.*

The "overriding purpose of detention pending removal proceedings is to determine removability and, if found removable, to effectuate removal from the country." *Xie v. Warden*, No. 5:26-cv-06719-SK, 2026 WL 3440831, at *3 (C.D. Cal. Nov. 11, 2026) (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003) and *Zadvydas*, 533 U.S. at 693). As this Court recently stated in *Xie*: "To be sure, whether the Executive *should* detain those like petitioner pending their removal proceedings is a legitimate policy question—and the subject of valid public debate. But that is different from whether the Executive *can* detain those like petitioner—who remain in the United States without lawful status—under immigration detention statutes Congress duly enacted." *Xie*, 2026 WL 3440831, at *3 (emphasis in original).

Petitioners have not established that their detention has become punitive relative to this purpose. Petitioners have been detained for approximately five months, a lengthy period, but one that is not *per se* excessive. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1064–65 (9th Cir. 2008) (holding that noncitizen's 41-

month detention under § 1226(a) for judicial review of his administratively final removal order was not excessively long as to violate substantive due process). Petitioners also do not allege that the government acted in a punitive manner through deliberate delay or that the circumstances of their detention are punitive. Petitioners were detained after remaining in the United States after the expiration of their visitor visas. The government's interest in detaining them at this stage is to determine removability, a nonpunitive justification for confinement that has not yet become excessive in relation to its purpose.

"A bond hearing is the primary test of whether detention is excessive to the government's interest in detention." *Sheng*, 2026 WL 2365088, at *2. There is no record that Petitioners ever had or that they requested a custody redetermination by the Immigration Judge. Petitioners may request and receive a bond hearing and may appeal any bond denial to the Board of Immigration Appeals and any question of law or constitutional question to the federal courts. As this Court noted in *Sheng*: "The Court is not inclined to grant a constitutional claim where the statutory route has not yet proved inadequate." *Id.* Petitioners are thus not entitled to habeas relief on their substantive due process claims.

## IV. CONCLUSION

Accordingly, the Petition is **DENIED**. Judgment shall be entered accordingly.

DATED: November 25, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE